**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| AMY HOLLINGSWORTH, | : | |
| *Plaintiff,* | : | Case No. 1:25-cv-27 |
| vs. | : | Judge Jeffery P. Hopkins |
| SHAUN PETERSON, *et al.*, | : | |
| *Defendants.* | : | |

---

**OPINION AND ORDER**

---

Plaintiff Amy Hollingsworth ("Plaintiff" or "Hollingsworth") pleads an array of claims stemming from her personal, professional, and legal relationship with Defendant Shaun Peterson ("Defendant" or "Peterson"). These claims include sexual harassment, retaliation, discrimination, wrongful discharge, violation of the Computer Fraud and Abuse Act ("CFAA"), and breach of contract. Peterson is before the Court alongside co-Defendant Shaun Peterson Living Trust (the "Trust") (collectively, "Defendants"), asking for dismissal of all claims. Doc. 7. The motion is fully briefed and ripe for consideration. *See* Docs. 8, 10.

## I.  BACKGROUND

Needing representation for an upcoming juvenile child support case, Hollingsworth contacted Peterson, an attorney, on or about February 14, 2019. Compl., Doc. 1, ¶ 12. Hollingsworth had no prior knowledge of Peterson and found him on the internet. *Id.* ¶ 13. After meeting to discuss her case, Peterson agreed to represent Hollingsworth, but only if she agreed to work for him. *Id.* ¶ 14. Though Hollingsworth had no legal experience, Peterson insisted that he would train her. *Id.* ¶ 15. Hollingsworth started the next day. *Id.* ¶ 16.

The relationship between Hollingsworth and Peterson quickly became murky. While both employing and legally representing her in her child support proceeding, Peterson initiated a sexual relationship. *Id.* ¶ 17. And to complicate matters further, Hollingsworth subsequently became Peterson's tenant after moving into and renting a space in his office building. *Id.* ¶ 18. While they were involved romantically, professionally, and as attorney and client, Hollingsworth observed questionable behavior by Peterson. *Id.* ¶¶ 19–20. In one instance, she alleges that Peterson "hacked into her computer and networks for the purpose of spying on her and destroying evidence." *Id.* ¶ 20. He also forged her name onto an eviction notice that was later filed as part of a complaint for eviction in state court. *Id.* ¶ 19.

In September 2023, Hollingsworth discovered that Peterson was engaged in a sexual relationship with another person. *Id.* ¶ 21. Hollingsworth informed him she was ending their personal relationship, but that she would continue to work for him and remain as his tenant until she secured alternative employment and housing. *Id.* In response, Hollingsworth says Peterson terminated her employment and served her with an eviction notice. *Id.* ¶ 22.

On or about June 28, 2024, Peterson learned that Hollingsworth had retained counsel. *Id.* ¶ 24. While knowing this, Peterson continued to communicate with Hollingsworth: he attempted to reach a resolution directly, promised to drop purported theft charges against her, and informed Hollingsworth that he was in contact with the father of her daughter, who was involved in the child support enforcement proceedings. *Id.* ¶¶ 25–27. Beyond this, Hollingsworth asserts that Peterson made a series of additional promises: to establish a trust fund for her, purchase a $275,000.00 house, provide a letter stating that her daughter resided at his address so that she could attend a local school, cover the cost for a hotel room stay until her new housing became available, assist in furnishing her new residence, and purchase her a

2

new car. *Id.* ¶¶ 28–33. Peterson also allegedly lured Hollingsworth to his residence under false pretenses, promised he would marry her, and then physically assaulted her. *Id.* ¶ 24. According to Hollingsworth, Peterson later took back all of his promises and kicked her and her daughter out of his home after she refused sexual relations. *Id.* ¶ 35.

Based on these events, Hollingsworth has asserted the following claims against Peterson and the Shaun Peterson Living Trust: (1) sexual harassment in violation of Title VII, (2) retaliation in violation of Title VII, (3) discrimination in violation of Ohio Rev. Code § 4112.02(A), (4) retaliation in violation of Ohio Rev. Code § 4112.02(I), (5) wrongful discharge in violation of public policy, (6) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), and (7) breach of contract.[1] Compl., Doc. 1, ¶¶ 36–76. Defendants seek dismissal of all of Hollingsworth's claims under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 7. On the one hand, Defendants seek dismissal of all claims against the Trust under Rule 12(b)(1) for lack of standing. On the other hand, Defendants seek dismissal of all claims against Peterson under Rule 12(b)(6) for failure to state a claim.

## II.  LAW AND ANALYSIS

### A. Dismissal under Rule 12(b)(1)

#### 1. Standard of Review

Because jurisdictional issues precede consideration of the merits, the Court must first consider Defendants' assertion that Hollingsworth lacks standing to pursue claims against the Shaun Peterson Living Trust. *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993) ("Where, as here, the defendant moves for dismissal

---

[1] In her Complaint, Hollingsworth skips from Count V to Count VII. *See* Compl., Doc. 1, PageID 12. There is no Count VI in her Complaint. As a result, the Court will treat the claims identified as Counts VII and VIII as Counts VI and Count VII, respectively.

3

under Rule 12(b)(1) as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first[.]" (cleaned up)). The reason for this is simple: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

As here, "challenges to standing are properly brought under Fed. R. Civ. P. 12(b)(1) for a lack of subject-matter jurisdiction." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023). Under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) ("[T]he plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met.").

A challenge under Rule 12(b)(1) can be either facial or factual. *Miller*, 2023 WL 7303305, at *2. Facial attacks question the sufficiency of the pleading. *Id.* The standard for whether a "complaint [] allege[s] jurisdiction adequately" is whether it "contain[s] *non-conclusory* facts which, if true, establish that the district court ha[s] jurisdiction over the dispute." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (emphasis added). "When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the district court must accept all material allegations of the complaint as true." *Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019).

In the case of a factual attack by a defendant seeking dismissal under Rule 12(b)(1), "no presumptive truthfulness applies to the factual allegations." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). And when reviewing a factual attack on

4

jurisdiction courts may consider sources outside the pleadings. *Id.* ("[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[T]he court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.").

### 2. Shaun Peterson Living Trust as a Party

Hollingsworth names the Shaun Peterson Living Trust as a party. Comp., Doc 1, ¶ 4. Peterson contends that all claims against the Trust should be dismissed on the basis that the Trust is not a properly named defendant in this action. Doc. 7, PageID 55–57. Hollingsworth concedes that, as a general rule, a trustee—not a trust—is the proper party, but asserts that "exceptions exist where the trust itself is implicated in the alleged wrongdoing." Doc. 8, PageID 76. Hollingsworth, however, cites no law to support that assertion.

Federal Rule of Civil Procedure 17 governs the issue of whether a party has capacity to be sued. Under the Rule, the capacity to be sued "is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domiciles; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located. . . " Fed. R. Civ. P. 17(b). Because the Trust is neither an individual nor a corporation, the Court looks to Ohio law.

Under Ohio law, a trustee, and not the trust itself, is the proper party defendant in litigation involving a trust. The trustee holds legal title to the trust property, and a trust generally lacks the capacity to be sued in its own name. *Fred Martin Motor Co. v. LML Techs., Inc.*, No. 5:07-cv-2475, 2008 WL 750555, at *1 (N.D. Ohio Mar. 19, 2008) (citing *Coverdell v. Mid-South Farm Equipment Ass'n*, 335 F.2d 9, 12–13 (6th Cir. 1964)). Therefore, the Court finds

5

the Trust to not be a properly named party and that all claims against the Trust must be dismissed.

## B. Dismissal under Rule 12(b)(6)

### 1. Standard of Review

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).

6

In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

### 2. Counts I and II: Title VII of the Civil Rights Act of 1964

Hollingsworth alleges Peterson violated Title VII of the Civil Rights Act of 1964. She advances two different claims under Title VII: sexual harassment and retaliation. Peterson argues that both claims should be dismissed because Hollingsworth failed to allege that Peterson is an "employer" under the Civil Rights Act of 1964. Doc. 7, PageID 57–58. Plaintiff counters that determining whether an employer meets the statutory threshold under Title VII is a fact-intensive inquiry that often requires discovery. Doc. 8, PageID 66.

An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees …" 42 U.S.C. § 2000e(b). As a result, a Title VII claim is subject to dismissal when the defendant is not included within the statutory definition of an employer. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). That said, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y H Corp.*, 546 U.S. 500, 516 (2006).

At this motion-to-dismiss stage, the issue is not whether Peterson satisfies the definition of an employer, but whether Hollingsworth has plausibly alleged that Peterson is an employer under Title VII. All the Complaint alleges is that Hollingsworth "was an at-will employee of Peterson within the meaning of Title VII." Compl., Doc. 1, ¶ 5. Her Complaint does not allege any facts suggesting that Peterson meets the definition of an employer under Title VII—let alone state in any way, shape, or form that Peterson qualifies as an employer within the ambit of the statute. *See Kubinski v. Equity Oil & Gas Funds*, No. 1:14-cv-1332, 2014 WL 5772162 (S.D. Ohio Nov. 4, 2014) (dismissing Title VII claim under Rule 12(b)(6) where

the plaintiff did not allege that the defendant was an "employer" under Title VII, nor plead any facts establishing that the defendant was an "employer"). Because Peterson's status as an employer is an element of Hollingsworth's claims, and because Hollingsworth's Complaint does not adequately plead facts suggesting Peterson is an employer under Title VII, this Court dismisses both Counts I and II without prejudice.

### 3.  Counts III and IV: Ohio Revised Code § 4112.02

Hollingsworth's analogous state law claims suffer from the same defect. In Counts III and IV, Hollingsworth alleges that Peterson discriminated and retaliated against her in violation of Ohio Rev. Code Chapter 4112. Peterson again argues these claims should be dismissed because the Complaint fails to allege that he was an employer under § 4112.01, which defines an employer as "a person employing four or more persons. . ." Doc. 7, PageID 58. As with her previous claims, because Hollingsworth pleads no facts from which it can be inferred that Peterson qualifies as an employer under § 4112.01, Counts III and IV must be dismissed without prejudice.

### 4.  Count V: Wrongful Discharge in Violation of Public Policy

Next, Hollingsworth alleges she was wrongfully discharged by Peterson in violation of Ohio's public policy. Compl., Doc. 1, ¶¶ 63–72. To establish a wrongful discharge claim under Ohio common law, a plaintiff must show "(1) 'a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)'; (2) dismissal 'under circumstances like those involved in [her] dismissal would jeopardize the public policy (the jeopardy element)'; (3) '[her] dismissal was motivated by conduct related to the public policy (the causation element)'; and (4) lack of an 'overriding legitimate business justification for the dismissal (the overriding justification

element).'" *Hale v. Mercy Health Partners*, 617 F. App'x 395, 402 (6th Cir. 2015) (citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 69–70 (1995)). "The first and second elements are questions of law for the court to decide, but the jury decides questions of fact relating to the latter two elements." *Id.* (citing *Collins*, 73 Ohio St.3d at 70).

To satisfy the first element (clarity), (1) the plaintiff "must both specifically identify the sources, and also identify specific policies located within those specific sources, rather than make general assertions to broad policies," and (2) "the sources of the public policies must parallel Ohio's whistleblower statute (*i.e.*, a parallelism)." *Romero v. City of Middletown*, 479 F. Supp. 3d 660, 671–72 (S.D. Ohio 2020) (citing *Hale v. Mercy Health Partners*, 20 F. Supp. 3d 620, 639 (S.D. Ohio 2014); *Hale*, 617 F. App'x at 403 (6th Cir. 2015); *Dean v. Consol. Equities Realty #3, LLC*, 2009-Ohio-2480, ¶ 11 (1st Dist.)). Parallelism can be shown if the source for the public policy on which a plaintiff relies is of the type "designed to protect the public's health and safety." *Romero*, 479 F. Supp. 3d at 672.

As to the first element, Hollingsworth points to two specific sources of public policy: O.R.C. §§ 4101.11 and 4101.12.[2] Compl., Doc. 1, ¶ 65. The issue for Hollingsworth, however, is that while these "are specific statutes, the Ohio courts that have considered those statutes have concluded that the policies reflected therein are 'very general and broad,' and thus the policies are not specific enough to satisfy the clarity element of a wrongful discharge in violation of public policy claim." *Romero*, 479 F. Supp. 3d at 675 (citing *Whitaker v. First Energy Nuclear Operating Co.*, 2013-Ohio-3856, ¶ 25 (6th Dist.)). Indeed, this Court recently elected to follow the precedent established by those courts in *Karlsson v. Cargo Aircraft Mgmt.*, No. 1:21-

---

[2]   Plaintiff also refers to Ohio Admin. Code 4729-5-30 and 5160-12-01 and the Ohio Rules of Professional Conduct in the heading of Count V. Compl., Doc. 1, PageID 11. It is not clear whether she intended to incorporate these as additional sources of public policy.

cv-257, 2026 WL 710132, at *13 (S.D. Ohio Mar. 13, 2026), and in the absence of any contrary authority emanating from the Supreme Court of Ohio, the same rule will be followed here. Further, Hollingsworth's broad references to "the state constitution," "statutes," "administrative regulations," and/or "common law," Compl., Doc. 1, ¶ 64, fare no better. *See, e.g., Romero*, 479 F. Supp. 3d at 673 ("[B]roadly citing entire sections of the United States Code, or 'EPA regulations' at large, is not specific enough."). Given that the first element needed to make out a claim for wrongful discharge in violation of Ohio's public policy is a question of law for courts to decide, and Hollingsworth has not met her burden in that regard, this Court need not consider the other elements which must be shown. *See Hale*, 617 F. App'x at 402. Considering these shortcomings as to the first element, Hollingsworth's wrongful discharge claim must also be dismissed without prejudice.

### 5. Count VI: Computer Fraud and Abuse Act, 18 U.S.C. § 1030

Hollingsworth also asserts that Peterson violated the Computer Fraud and Abuse Act ("CFAA"). Compl., Doc. 1, ¶¶ 73–74. Specifically, she alleges he "hacked into her computer and networks for the purpose of spying on her and destroying evidence." *Id.* ¶ 20.

The language of CFAA provides for a civil action if one of five factors is satisfied. 18 U.S.C. § 1030(g). Here, the only relevant factor is (I), which requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Under the CFAA, "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

10

Hollingsworth fails to allege facts suggesting she has incurred at least $5,000 in losses as a result of Peterson's alleged activity. In fact, Hollingsworth has not tied any amount of loss directly to the alleged violation of CFAA under this claim. Instead, Hollingsworth's Complaint only demands "more than all jurisdictional minimums" and in excess of $25,000 with respect to her pendent state law claims. Compl., Doc. 1, PageID 12. Plaintiff argues that the allegations of unauthorized access and destruction of evidence "reasonably impl[ies]" that she meets the $5,000 threshold of loss. Doc. 8, PageID 74. But a plaintiff must plead factual allegations that raise a right to relief above the speculative level. *Twombly,* 550 U.S. at 555.

We find support for this conclusion in *Gen. Sci. Corp. v. SheerVision, Inc.,* No. 10-cv-13582, 2011 WL 3880489, at *4 (E.D. Mich. Sept. 2, 2011). There, the court held that the plaintiff failed to adequately plead $5,000 of damages under the CFAA because the plaintiff stated that it "merely believe[d]" that it would incur such damages and did not allege specific facts suggesting that it incurred at least $5,000 in losses. *Id.* Similarly, here, Hollingsworth relies on a supposed "reasonable implication" that the threshold is met but alleges no specific facts suggesting at least $5,000 in losses. Doc. 8, PageID 74. Because Hollingsworth has failed to adequately plead facts as to the loss threshold under the CFAA, this Court dismisses Count VI without prejudice.

### 6. Count VII: Breach of Contract

Lastly, Hollingsworth alleges Peterson breached a contract by reneging on the promises he made to her. Compl., Doc. 1, ¶ 76. Under Ohio law, a party has stated a breach of contract claim when there is: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff because of the breach.

11

*Mitchell v. Fujitec Am., Inc.*, No. 1:20-cv-363, 2022 WL 836424, *8 (S.D. Ohio Mar. 21, 2022) (quoting *Johnson v. Delphi Corp.*, 261 F. Supp. 2d 955, 961 (S.D. Ohio 2003)).

Here, Hollingsworth does not adequately plead the existence of a contract. To do so, "a plaintiff must allege facts showing an offer and acceptance and a meeting of the minds, which is supported by consideration." *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 2010-Ohio-2121, ¶ 23 (6th Dist.) (citing *Kostelnik v. Helper*, 96 Ohio St.3d 1 (2002)). All the Complaint includes is a list of promises made by Peterson. It is devoid of factual allegations that would permit a reasonable jury to reach an inference that there was an offer and acceptance between the parties, and there is no allegation as to whether there was an agreement supported by consideration.

Hollingsworth contends that "the existence of a contract and the adequacy of consideration are factual issues that cannot be resolved at the pleading stage." Doc. 8, PageID 75. While it is true that the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," *Directv, Inc.*, 487 F.3d at 476, Hollingsworth still has the burden of pleading facts that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Because Hollingsworth's Complaint falls short in this regard, this Court dismisses Count VII without prejudice.

### C. Leave to Amend

Hollingsworth requests, as an alternative to dismissal, that she be granted leave to amend her Complaint. Doc. 8, PageID 77.

Federal Rule of Civil Procedure 15(a)(2) provides that district courts should "freely" grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This

"mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Therefore, absent any reason including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman*, 371 U.S. at 182). Sixth Circuit case law "manifests liberality in allowing amendments to a complaint." *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (internal quotation marks and citations omitted).

The Court will permit Hollingsworth to amend her Complaint. Her new Complaint must address or otherwise cure the deficiencies in her pleadings as outlined in this Opinion and Order. Failure to cure such deficiencies may result in an adverse determination against her and this Court's dismissal of these claims on the merits and with prejudice.

## III.    CONCLUSION

To survive dismissal at this stage, Hollingsworth must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Hollingsworth has failed to meet this threshold as to all claims. Thus, for the reasons stated, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 7) and dismisses the Complaint **WITHOUT PREJUDICE**. The Court therefore **DENIES** Hollingsworth's Motion for Discovery (Doc. 6) without prejudice. Hollingsworth may amend her Complaint within 21 days of the date of this Opinion and Order. Absent timely compliance, this action will be closed without further notice.

**IT IS SO ORDERED.**

March 31, 2026

Jeffery P. Hopkins
United States District Judge

14